May it please the Court, John Sledd for Appellant Ancita Tsosie. The Relocation Agency denied Ms. Tsosie any assistance when she was compelled by federal law to leave her ancestral lands on the basis of her not making $123 of income needed to total the $1,300 in income that the agency has for a long period of time because it's self-sufficiency. That decision hinges on an unexplained credibility finding that Ms. Tsosie and her sister's testimony regarding income amounts earned in 1979 is inherently not credible, income earned in 1979 being the only income that is relevant under the regulations. It found that she was not credible and her sister were not credible on the amount of income, despite finding them to be biases on every other matter they testified to. The hearing officer identified no record evidence, let alone substantial evidence, let alone a cogent basis for that finding. The agency also arbitrarily abandoned a decades-old interpretation of its eligibility regulations as allowing income amounts to be proven solely through testimony. This Court should therefore reverse. It should remand, but it should remand with instructions to award benefits because the record has been fully developed with agency cross-examination below, and it will do the record will be no better at the age of 40 than it was at the age of 33. An open-ended remand will only prolong Ms. Tsosie's hardship. Sotomayor, I think you're referring to this 1985 memo. Is that correct? Yes, the crystal memo. Right. And the district court seemed to discount the view that this was somehow a unilateral determination of oral testimony as a foundation in saying, well, this really focused on older individuals in a traditional lifestyle. Is there any basis for that? The crystal memo, I think, set up three categories, really, of people and different methods of proof that were suggested under the regulation for each. For those people who had documentation of $1,300 in income, whether that was from general assistance, which is where the 1,300 comes from, or whether it was because of wage stubs, things like that, they're in. Right. That's enough. For individuals who are under the age of 18, so there's a presumption of dependence on parents or other custodians, they have to have documentation to back up their testimony. But the in-between group, the agency, the crystal memo, which they've followed religiously for 30 years, and it's followed in cases by the district court that are cited to you in the U.S. brief, the agency counsel's memo says that for that middle group, you have to consider the facts regarding the lifestyle in the Hopi partition lands, a very undeveloped, extremely remote area that simply does not generate regular jobs, and people don't get pay stubs. When you're doing subsistence farming and livestock, you're weaving, you're selling arts and crafts, you're doing odd jobs, there's just not documentation to be expected. The crystal memo leaves open the possibility that something might indicate the need for more documentation and the agency can ask for it. But that is not what the judge did here. The judge here just said, you've got to have documentation for the amount of income in 1979, period, full stop. I want to go back and clarify first that that regulation that that interpretive statement by counsel has been treated as if it were a regulation. If you look at the agency's initial denial letter to Ms. Sozi, which is ER-374, it says, to be a head of household, you have to meet one of the following criteria. Married a parent or, quote, self-supporting parents earning $1,300 per year or more. The agency cannot tell an applicant that this is the rule and then come along after the fact and say, nope, that isn't the rule, you had to follow the regulatory text specifically and testify that you were self-supporting. And that's what the United States is arguing for here. When an administrative law judge makes a credibility finding, and this is shown by numerous cases in the Social Security context, the immigration context, under the APA, they've got to explain what they're doing. That's a fundamental principle of the APA. It's like new math. You've got to show your work, right? Doesn't matter what the answer is. You've got to show your work. And the testimony here was that by Ms. Sozi and her sister that they babysat, that Ancita babysat for her sister, was paid $60 a week for the last three months that their family was resident on HPL, and then continued that income after they moved off HPL because her sister was a teacher far away in Ganado. They were found completely credible, including the fact that the babysitting was done. They were found credible in testimony that Ancita was paid. This is findings of fact 1 and 2 at ER 20 to 21. The sole testimony that was found not credible was the actual amount of payment. There are three adverse credibility findings. I think it pays to look at the exact language of them on ER 21 and 24. Applicant's testimony, this is the first one, regarding her earnings from babysitting in the fall of 1979 is not credible, period, close quote. For her sister Doris, quote, except for the amount of money applicant was paid for babysitting, applicant's sister is a credible witness. And then third, quote, recollections about payment made more than 33 years ago are not credible. An adverse credibility finding has to identify specific cogent reasons, and it has to point to substantial evidence in the record, and these findings fail. They are naked declarations. They are not explanations. They point to nothing in the record. They point to no internal inconsistencies in testimony, no external inconsistencies, nothing found to be inherently improbable about paying someone $60 a week to babysit your one-year-old child in the middle of nowhere. There's nothing specific to the facts of this case. In addition, the hearing officer did not rely on any of the facts that agency counsel has pointed to at the district court in its briefing here. Those are post hoc. They are mentioned. The facts are mentioned, but they are not linked by the hearing officer to his decision. And finally, the agency gives no explanation why, if testimony regarding the amount of income is inherently incredible, other testimony regarding events at the same relevant time period is not also incredible. And if that's the rule, N. C. D'Souza and her sister couldn't testify to any of the facts that they testified to. In fact, no applicant at present could testify to the relevant dates, because they are all 1974 to 1986. They're all 30 years in the past now. Just to let you know, in terms of your rebuttal time, you have about two and a half minutes. Good. So I'm just about done, then. I just wanted to mention the remand. I mean, this is well-established, again, in Social Security law. There's an EPA case that we cite. It pops up in a number of areas of law, that when an agency has an opportunity the first time to make a credibility finding and tie it to the record as required and does not do it, when the record is fully developed and when applying the proper legal standard and discounting the invalid credibility finding, the agency ruling should be reversed, the court has the power to do so, and that it should do so when circumstances where there's nothing to be gained but delay. And in this case, 40 years, we hope, is about as rare a circumstance as we can encounter in administrative law to wait for a decision. And we ask this Court to reverse and remand for that reason. Thank you. Thank you. Good morning. May it please the Court, my name is Varu Cholukamari for the United States. The District Court was correct in affirming the agency's finding that Ms. Sosee, when she was 19 years old, had just finished a summer job and was still living at home with her family, had not at that point reached the level of being a self-supporting head of her own household. And I want to talk about the head of household finding first and then talk about why, if this Court were to disagree and reverse the District Court, why an ordinary remand is what would be in order, because there are outstanding issues and potentially other bars to her eligibility that would need to be reached below. On the head of household question, there's been a lot of talk about $1,300 and the $123, which seems awfully close, but that is not the threshold. The regulations for head of household explain that in order to be a household, a single person would have to, quote, actually maintain and support herself. And what the cases show, even the cases that the hearing officer cases that the plaintiff put into the record, they show that what this means is what we ordinarily think it means. It means that you were taking care of your own basic necessities, clothing, food, transportation, and the like. And the Riggs case at ER 30 is a good elucidation of this, because there, in many of the other cases, the hearing officer cases that have been provided, the applicants testified that they paid for their own food, they showed how they're able to get their own clothing, not just that they were earning money, but that they had actually used that money to meet their own needs. And that is the threshold. Now, the $1,300 figure has been used by the agency, to be sure, but it's been used as a minimum threshold that can be indicative of self-support, but not conclusive. And what that means is that somebody could be making less than $1,300, but they are, through subsistence living or otherwise, they are still being able to make meet their own needs without relying on others for the majority of their self-support. I mean, it can also mean that somebody might be making more than $1,300, but if it's shown that they are actually not supporting themselves, perhaps they are living off-site in Phoenix, and they're not actually being able to self-support, or they're not really using that money to do so, and they're still relying on their parents. So that $1,300 figure is not determinative. It is a minimum threshold that the agency uses, but it's not the end-all, be-all. But it's the lack of the $1,300 here as an initial threshold that caused the ruling that brings us here. Well, I think that the hearing officer did make the finding that Ms. Sosi was not a self-supporting head of household, and that's in the conclusion portion of the decision. And he based that on two factors. One is that she didn't show his decision was that she didn't put in credible evidence establishing that she had even met the $1,300 figure. And the second reason he gives is that he looked at her general employment history at this time period and said, well, she didn't have any reported income for the fall. She also didn't have any reported income for the next five years. So I don't see why, if an eligibility requirement needs to be met at a certain date, it's unclear to me why what you do after that should be imputed to your past. Well, I think that, you know, this is a determination. It's a factual finding that the hearing officer has to make on a case-by-case basis. And the regulations, they don't say that you have to look to a certain window. But I think the nature of the inquiry, which is are you actually supporting yourself and providing for your own needs, it has to mean something more than I got a check for $1,300 on the last day before I left, right? Because at that point, you're not showing that you've actually been buying your own food, taking care of yourself, so it is a, you know. It doesn't quite answer my question. What's that have to do with what I do next week? Well, if in our hypothetical scenario where you get the check for $1,300 at the end of the time period, November of 1979 where she left, she wouldn't have been able to show that she was actually using those earnings to support herself. But that's all based on kind of speculation that doesn't seem to be in the record. If the fact that she didn't have Social Security earnings downstream doesn't say that she didn't meet it at the decision date. I mean, that's when I'm having trouble understanding the relevance of that testimony at all. I think that it's relevant because I think it tends to show that if you've been making no income for those five years and that you also didn't report this income, I think it's less likely that you were getting paid for this. Well, I mean, do people report in these circumstances or any basis to say people report this $60 a week babysitting money? I mean, that just seems unreasonable to impose that kind of a requirement given the circumstances. Well, you know, I think whether it's reasonable for her to take the risk of not reporting it to the IRS or Social Security Administration is one question. But the question here, and I think she would have had to or her sister would have had to actually given the amount of money that they claimed she was making in 1979 and 1980. But that's a different question. People assume that kind of minor risk all the time. But the question is whether or not it was unreasonable for the hearing officer to consider the lack of documentation as one of several factors. But getting back to this question of the decision, I think he made the decision that she was not a self-supporting head of household based on two things. One is the credibility finding, and the other is that, you know, there was nothing in the record showing that she had actually maintained herself. And as a district court found, even putting aside the credibility finding, I think you can affirm the hearing officer's decision on that basis alone. So on what basis do we give deference to the finding of a lack of credibility on the $60 on this record? There's no basis for it. They laughed when they said it. They winked at each other when they said it. Some sort of indication that it was not worthy of trust when everything else they the hearing officer buys at full value? Well, I think a couple of things. The judge here, the hearing officer, made an explicit finding, and he based that on three reasons. One is the age of the events in which they were testifying about, that it was 33 years ago. And this is a specific financial detail to be recalled that crisply. I think it's not unreasonable to find that that's unreliable. Even though the government in large part is responsible for it being 30 years later? I don't think that the government – well, first of all, if the government were responsible, which we don't think it was in this case, that wouldn't make something that's not credible. It wouldn't make it more credible. But the other point is that her delay is not the government's. She has not shown that it's the government's responsibility in this case. And under the agency reopened the application process in its discretion, and it did so in the Herbert case, in response to the Herbert case, because a particular plaintiff who was potentially eligible hadn't been personally notified. In Ms. Sosey's case, she was not potentially eligible under the regulations in 1979. In 1979, the head of household regulation actually required a person to have maintained their own house. And in 1982, that was revised again, and it required a person to have been self-supporting for the last – from 1976. And so there was no point in time, unlike the Herbert plaintiff, where Ms. Sosey would have been required to be told by O'Neill, or that she claims that she wasn't told. And I want to note that there are a number of things in the record that support the credibility finding, in addition to the reasons that the hearing officer gave. In her application, she was asked if she had ever worked full-time, and she said yes beginning in 1989. That is, you know, perhaps an omission at best or a contradiction. Roberts. But what did she say about the babysitting? Indeed, it was part-time, and there was no place to put that on the form. And I looked at the form and would agree. Well, according to her sister and her testimony, it was full-time. She said she babysat Monday through Friday, five days a week, four months in 1979, and the entire year in 1980. So according to her, it was full-time, and that contradicts what she said in her application. It is also significant that when, in her appeal letter, she mentioned all of the other types of jobs that she might have had. She even mentioned that she drove her grandfather places, but she didn't mention that she watched a 1-year-old for an entire year and got paid for it. That seems to be, you know, an odd omission not to remember if you're going to remember all those other details. So there is the standard here, though, where, you know, usually we're stuck to the reason given in the administrative context. And here there's no reason given other than passage of time. But none of these the facts you're laying out seem like they could be a reasonable basis, but that's not what the record that we're judging this on, is it? So this Court has to look at the record as a whole to determine whether it compels a contrary finding. The hearing officer gave the three reasons, which was the age of the testimony, the lack of documentation in her work history. But the looking at her application, that is in the record. Looking at her appeal letter, that is in the record. And those facts go to support his ultimate credibility determination. And we would ask that if this Court decides to remand, that an ordinary remand is in order, because there are a number of bars, including whether she actually maintained herself. Thank you. I would appreciate it if you could begin where your colleague ended, and that is even go back, because there are other bars that the hearing officer didn't need to consider once he made the decision he did. I don't see it, Your Honor. I'm sorry to be thinking about it. But the record, the rule required that she show $1,300 of income. The testimony and the documentation showed that. In addition, there was testimony not relied upon by the hearing examiner, not testimony, I'm sorry, but material on the record in her notice of appeal, which is ER 372, where she clarified that during that time period after she moved off, she was having to work odd jobs for $1,300. So what the record shows throughout that whole period is that she was an adult. Her parents have moved away. She has to work odd jobs. Specifically, she's doing babysitting. And she is, in fact, taking care of others, as opposed to being taken care of. So the Social Security rule is pretty clear, that if you follow the right rule and you put aside the erroneous credibility determination, and the record that's in front of you is adequate, that this Court can and should order a remand with instructions to pay benefits and not give the agency a second bite of that apple. Thank you. I hope that answered. I'm not sure it did. But I just had a couple of very quick points. First, many of the arguments were not what the hearing examiner relied upon. Urged the Court to look at the actual findings. He relied upon solely the lack of documentation of income. There's a lot of income that's exempt from Social Security reporting, in addition to a lot that's not reported by people when it should be, including nonprofit work and local government work, which is the kind of work that's prevalent in economically undeveloped areas. I think that's all I really need to point out. Thank you. Unless there are further questions? No. Thank you. Thank all counsel for your argument. You're obviously well-versed in this area, and we appreciate this. The case just argued is submitted, and we're adjourned for the morning.
judges: McKeown, Gould, Battaglia